Keith J. Rosenblatt, Esq. (NJ Bar No. 016631997)
Michael G. Congiu, Esq. (admitted *pro hac vice*)
Emily Freeman David, Esq. (NJ Bar No. 121862014)
**LITTLER MENDELSON, P.C.**
One Newark Center, 8th Floor
Newark, New Jersey  07102
(973) 848-4700
*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| INTERNATIONAL BROTHERHOOD OF TEAMSTERS, LOCAL NO. 863; BOARD OF TRUSTEES OF THE LOCAL UNION NO. 863 I.B. OF T. PENSION FUND; MARGARET CHAVIS; AND EVAN G. SCOTT,<br><br>Plaintiffs,<br><br>vs.<br><br>SYSCO METRO NEW YORK, LLC f/k/a SYSCO FOODS OF METRO NEW YORK, LLC; SYSCO CORPORATION; SYSCO CORPORATION RETIREMENT PLAN; JOHN DOES 1-100,<br><br>Defendants. | Civil Action No. 2:18-cv-12884-WJM-MF |

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO
PLAINTIFFS' SECOND MOTION TO REMAND**

*On the brief*:

    Keith J. Rosenblatt, Esq.
    Michael G. Congiu, Esq.
    Emily Freeman David, Esq.

## TABLE OF CONTENTS

**PAGE**

PRELIMINARY STATEMENT ................................................................................................ 1

STATEMENT OF FACTS ......................................................................................................... 2

ARGUMENT ............................................................................................................................... 4

    I.    SYSCO CORP. AND SYSCO PLAN WERE NOT REQUIRED TO PROVIDE WRITTEN CONSENT TO THE NOTICE OF REMOVAL .............. 4

        A.    Sysco Corp. and Sysco Plan Did Not Need to Consent to Removal Because They Were Not Properly Served .................................................... 4

        B.    Sysco Corp. and Sysco Plan Certified in Writing that They Authorized Sysco Metro to Consent on Their Behalf ............................... 7

        C.    If Defendants Failed to Comply with the Procedural Requirements Governing Removal, They Should Be Granted the Opportunity to Amend Their Removal Petition Due to the Existence of "Extraordinary Circumstances." ................................................................. 8

    II.    THIS COURT MAINTAINS CLEAR SUBJECT MATTER JURISDICTION UNDER ERISA .............................................................................. 9

        A.    Plaintiffs' Claims Fall Under Section 502(a) of ERISA .......................... 10

        B.    No Other Independent Legal Duty Supports the Plaintiffs' Claims ........ 11

    III.    PLAINTIFFS' REQUEST FOR FEES SHOULD BE DENIED .......................... 15

CONCLUSION ........................................................................................................................... 16

## **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Advanced Surgery Ctr. v. Connecticut Gen. Life, Ins. Co.*,
   No. CIV.A. 12-2715 JLL, 2012 WL 3598815 (D.N.J. July 31, 2012) .................................5, 6

*Aetna Health Inc. v. Davila*,
   542 U.S. 200 (2004) ..................................................................................................................9

*Alessi v. Raybestos-Manhattan, Inc.*,
   451 U.S. 504 (1981) ..................................................................................................................9

*Burgos v. Int'l Vacation Club, Ltd.*,
   2012 WL 787385 (N.J. Super. App. Div. Mar. 13, 2012) ........................................................6

*Cliffside Park Imaging & Diagnostic Ctr. v. Aetna*,
   No. CIV.A. 12-5868 WJM, 2013 WL 592264 (D.N.J. Jan. 28, 2013) ...................................10

*Cty. of Morris v. State Nat. Ins. Co.*,
   No. CIV.A. 10-6616 (WJM), 2011 WL 2039057 (D.N.J. Apr. 26, 2011) ................................6

*Gardner v. Heartland Indus. Partners, LP*,
   715 F.3d 609 (6th Cir. 2013) ..................................................................................................11

*Gomez v. Ericsson, Inc.*,
   No. 2:13-CV-00372-JRG, 2014 WL 243698 (E.D. Tex. Jan. 22, 2014), aff'd,
   828 F.3d 367 (5th Cir. 2016) ..................................................................................................12

*Griffioen v. Cedar Rapids and Iowa City Ry. Co.*,
   785 F.3d 1182 (8th Cir. 2015) ..................................................................................................7

*Ingersoll-Rand Co. v. Barnett*,
   No. 05-1636 (DRD), 2005 WL 2175461 (D.N.J. Sept. 7, 2005) ..............................................6

*Martin v. Franklin Capital Corp.*,
   546 U.S. 132 (2005) ................................................................................................................16

*Metropolitan Life Insur. Co. v. Taylor*,
   481 U.S. 58 (1987) ..................................................................................................................10

*Michaels v. State of N.J.*,
   955 F. Supp. 315 (D.N.J. 1996) ............................................................................................8, 9

*Michalak v. ServePro Industries, Inc.*,
    No. CV 18-1727, 2018 WL 3122327 (D.N.J. June 26, 2018) ................................................7, 8

*New Jersey Carpenters & the Trustees Thereof v. Tishman Const. Corp. of New Jersey*,
    760 F.3d 297 (3d Cir. 2014)..................................................................................11, 14, 15

*Oa Rum Hong v. Egas*,
    No. CIV 13-3330 WJM, 2013 WL 5567566 (D.N.J. Oct. 7, 2013)...........................................6

*Pascack Valley Hosp. Inc. v. Local 464A UFCW Welfare Reimbursement Plan*,
    388 F.3d 393 (3d Cir. 2004)..................................................................................10, 11, 14

*R.K. v. Bender*,
    No. 17CV1299ESJAD, 2017 WL 3302690 (D.N.J. July 7, 2017) ........................................5, 7

*Siebert v. Norwest Bank Mn.*,
    166 F. App'x 603 (3d Cir. 2006) ..............................................................................................7

*Talley v. United States*,
    No. CIV. 11-1180, RBK/KMW, 2014 WL 1248946 (D.N.J. Mar. 26, 2014) ..........................14

*Wal-Mart Stores, Inc. v. Elec. Ins. Co.*,
    No. CIV. 06-3132 (RBK), 2007 WL 137238 (D.N.J. Jan. 18, 2007) ........................................9

*Wood v. Prudential Ins. Co. of Am.*,
    207 F.3d 674 (3d Cir. 2000).....................................................................................................10

**Statutes**

29 U.S.C.A. §1132(a)(1)(b) ................................................................................................. *passim*

28 U.S.C. § 1446................................................................................................................................5

Employee Retirement Income Security Act of 1974, as amended ........................................ *passim*

New Jersey Prevailing Wage Act ................................................................................................14, 15

**Other Authorities**

*Merriam-Webster Dictionary*..........................................................................................................12

N.J. Ct. R. 4:4-4(a)............................................................................................................................5

N.J. Ct. R. 4:4-4(b)(1)...............................................................................................................4, 5, 6

Defendants Sysco Metro New York, LLC ("Sysco Metro"), Sysco Corporation ("Sysco Corp."), and Sysco Corporation Retirement Plan ("Sysco Plan") (together, "Defendants") submit this Memorandum of Law in opposition to the Second Motion to Remand ("Pls. Mot.") filed by Plaintiffs International Brotherhood of Teamsters, Local No. 863 ("Local 863"), Board of Trustees of the Local Union No. 863 I.B. of T. Pension Fund (the "863 Fund"), Margaret Chavis ("Chavis"), and Evan G. Scott ("Scott") (together, "Plaintiffs").

## PRELIMINARY STATEMENT

Plaintiffs' claims are plainly preempted by the Employee Retirement Income Security Act of 1974, as amended ("ERISA") and, despite their misguided technical basis for remand, Plaintiffs' claims should not be remanded.

Turning first to Plaintiffs' misguided technical basis for remand.

Plaintiffs' extended discussion of the so-called "rule of unanimity" rests on a single and unstated assumption – that all defendants were properly served. This assumption is false. Sysco Corp. and Sysco Plan have *not* been properly served under New Jersey's long-arm statute, and their consent was thus unnecessary to effectuate removal. Even assuming, *arguendo*, that Sysco Corp. and Sysco Plan had been properly served, they consented to the removal and certified their consent in writing shortly thereafter within a reasonable period of time. There is legal authority holding that remand would be inappropriate on this "hyper-technical and unrealistic" basis.

Further, Plaintiffs have pled preempted ERISA claims. ERISA's broad preemptive power is well-settled. Superseding the "well-pleaded complaint rule," Section 502 of ERISA requires courts to dive beyond the face of a complaint to determine whether a plaintiff's state law claims are covered by ERISA's civil enforcement scheme, as not to deny a defendant its right to defend such claims in a federal forum. 29 U.S.C.A. §1132(a)(1)(b) ("Section 502" or "§ 502").

1

Plaintiffs attempt to sidestep Section 502 by anchoring their common law breach of contract claim to a purportedly "independent" agreement (the "Spinoff Agreement") governing the transition between two ERISA-governed pension plans. This incredible claim is initially laid bare by the fact that the Spinoff Agreement incorporates, by reference and as an Exhibit, the Sysco Plan. The Spinoff Agreement then, by its very terms, actually incorporates and requires the interpretation of an ERISA plan. This is an independent basis for denying Plaintiffs' Second Motion for Remand. Yet another independent basis is that the interpretation and enforcement of the terms of the Spinoff Agreement, particularly as it relates to the transition of certain benefits between the two ERISA plans, necessitates an analysis of the two ERISA plans it bridges. Without interpreting the substance of two ERISA pension plans – the Local 863 Plan and the Sysco Plan – this Court cannot determine whether Defendants upheld their purported obligations under the Spinoff Agreement to carry over certain benefits from one plan to the other, as alleged by Plaintiffs. As such, Plaintiffs' claims are preempted by Section 502 of ERISA.

For these and other reasons addressed below, Plaintiffs' Second Motion for Remand should be denied.[1]

## STATEMENT OF FACTS[2]

Sysco Metro is a food service distributor, wholly owned by Sysco Corp. A contingency of Sysco Metro's employees is represented by the labor bargaining union, Local 863. [Compl. at ¶ 5]. Until approximately August 2008, employees of Sysco Metro who were members of Local 863 participated in an ERISA-regulated pension plan (the "863 Fund Pension Plan") that was adopted and implemented by the 863 Fund, a legal entity functioning as a pension fund that

---

[1] Defendants reserve their right to compel arbitration of this dispute as provided by Section 7 of the Spinoff Agreement. [ECF No. 15-4, Ex. G, at § 7].

[2] Although Defendants dispute the substantive facts alleged in the Complaint, that dispute is immaterial for purposes of this motion, which relates only to subject matter jurisdiction.

provided benefits to Local 863 members.  [Compl. at ¶ 6; Plaintiffs' Motion to Remand ("Pls. Mot."), at 1].  In or around 2008, Sysco Metro decided to withdraw its participation from the 863 Fund and instead, enroll its Local 863 employees (the "Transfer Group") in the Sysco Plan, an ERISA-regulated employee retirement plan in which a number of Sysco Metro's employees already participated.  To facilitate the transition from the 863 Fund Pension Plan to the Sysco Plan, Sysco Metro, and Sysco Corp. engaged in extensive negotiations with Local 863 and the 863 Fund, through their respective counsel, to establish the terms and conditions under which the transfer would be effectuated, including which benefits and liabilities would be carried over from the 863 Fund Pension Plan to the Sysco Plan.  The agreed-upon terms of the transfer were memorialized in an agreement executed by the 863 Fund, Sysco Corp., and Sysco Metro that, quite critically, incorporated a Term Sheet with copies of the Sysco Plan, and its governing Trust Agreement, and an Amendment to the Sysco Plan (the "Spinoff Agreement").  [ECF No. 15-4, Ex. G., at §5(a)].

On July 13, 2018, Plaintiffs filed the instant litigation in the Superior Court of New Jersey Law Division, Hudson County.  In their Complaint, Plaintiffs allege that the Sysco Plan denied Plaintiff Chavis a "Death Benefit" in the amount of $3,000, which was previously available to spouses and beneficiaries of deceased participants of the 863 Fund under the terms of the 863 Fund Pension Plan.  [Pls. Mot. at 3].  According to Plaintiffs, "[u]nder the relevant Plan Documents and the Spinoff Agreement, Ms. Chavis had the right to and is owed a $3,000 Death Benefit on account of the death of her husband."  [Compl. at ¶ 7].

Plaintiffs further allege that the Sysco Plan denied Plaintiff Scott the right to assign his monthly pension to a non-spouse beneficiary in the event that he died prior to retirement.  [Compl. at ¶ 8].  Plaintiffs contend "that under the Spinoff Agreement, Scott and other Transfer

3

Group members like him have the right and entitlement to designate and change a nonspouse beneficiary as a recipient of such pension benefits as are set forth in the applicable Plan documents, should he die before he begins receiving his pension." [Compl. at ¶ 26].

On July 19, 2018, Sysco Metro was served with a copy of the Complaint and Summons at its Jersey City office. That same day, a process server personally handed copies of the Complaint and Summons to an employee in Sysco Corp.'s Houston, Texas office in an apparent attempt to serve both Sysco Corp. and Sysco Plan. At no point prior to this attempted service did Plaintiffs file an affidavit certifying that personal service could not be made in New Jersey pursuant to N.J. Ct. R. 4:4-4(b)(1).

On August 16, 2018, Defendant Sysco Metro filed a Notice of Removal with this Court, indicating that although Sysco Corp. and Sysco Plan had not yet been served, they consented to removal at the time the Notice was filed. [ECF No. 1, at ¶ 3]. On September 5, 2018, Plaintiffs filed a motion to remand the case to state court. [ECF No. 7]. On September 11, 2018, Sysco Corp. and Sysco Plan submitted letters to this Court certifying (without waiving any defenses, including as to service of process) that they had authorized Sysco Metro to consent to removal on their behalf in its Notice of Removal. [ECF No. 8]. Plaintiffs subsequently withdrew their motion to remand at the request of the Court, [ECF No. 10], and refiled a second motion to remand on October 26, 2018. [ECF No. 15].

## ARGUMENT

**I. SYSCO CORP. AND SYSCO PLAN WERE NOT REQUIRED TO PROVIDE WRITTEN CONSENT TO THE NOTICE OF REMOVAL**

    **A. Sysco Corp. and Sysco Plan Did Not Need to Consent to Removal Because They Were Not Properly Served.**

4

Pursuant to 28 U.S.C. § 1446, a defendant may file a notice of removal of a civil action within thirty days after it is served with the initial pleading. 28 U.S.C. § 1446(b)(1). Only those "defendants who have been properly joined and served must join in or consent to the removal of the action." 28 U.S.C. § 1446(b)(2)(a); *see also R.K. v. Bender*, No. 17CV1299ESJAD, 2017 WL 3302690, at *3 (D.N.J. July 7, 2017), report and recommendation adopted, No. CV171299ESJAD, 2017 WL 3299037 (D.N.J. Aug. 1, 2017) ("It appears that Plaintiff has never effectuated proper service of process over Defendant Najm and, therefore, the Removing Defendants were under no obligation to obtain his consent to or joinder in their removal.").

To determine whether a defendant was properly served, such that its consent to removal is necessary, courts look to the state law under which service was made. *See, e.g., Advanced Surgery Ctr. v. Connecticut Gen. Life, Ins. Co.*, No. CIV.A. 12-2715 JLL, 2012 WL 3598815, at *8 (D.N.J. July 31, 2012), report and recommendation adopted, No. CIV.A. 12-2715 JLL, 2012 WL 3598799 (D.N.J. Aug. 21, 2012). New Jersey law requires a plaintiff to attempt to personally serve all defendants within the State of New Jersey. N.J. Ct. R. 4:4-4(a). If a plaintiff is unable to personally serve a defendant within the State of New Jersey (*e.g.*, the defendant is an out-of-state corporation with no place of business, officer, director, agent, person authorized to accept service, or employee in New Jersey), the plaintiff may serve the defendant by personal service outside the State, only if the plaintiff first files an affidavit certifying that "despite diligent effort and inquiry personal service cannot be made" within the State of New Jersey (known as an "affidavit of inquiry"). N.J. Ct. R. 4:4-4(b)(1).

It is well settled that "**the failure to file an affidavit of diligent inquiry is not a mere technicality, but an error that deprives a court of jurisdiction**." *Advanced Surgery Ctr.*, 2012 WL 3598815, at *6 (emphasis added). It is also well-settled that the failure to file an affidavit of

5

inquiry prior to service renders service improper and thus does not trigger the thirty-day removal period. *Oa Rum Hong v. Egas*, No. CIV 13-3330 WJM, 2013 WL 5567566, at *4 (D.N.J. Oct. 7, 2013) (Martini, J.) (finding that plaintiff's failure to file an affidavit of inquiry rendered service improper and therefore, the thirty-day removal period did not commence); *Advanced Surgery Ctr.*, 2012 WL 3598815, at *9 (citing *Burgos v. Int'l Vacation Club, Ltd.*, 2012 WL 787385 (N.J. Super. App. Div. Mar. 13, 2012) (the filing of an affidavit of inquiry is not a mere technicality; thirty-day removal period was not triggered when plaintiff served defendant out of state without first filing an affidavit of inquiry); *Cty. of Morris v. State Nat. Ins. Co.*, No. CIV.A. 10-6616 (WJM), 2011 WL 2039057, at *3 (D.N.J. Apr. 26, 2011) (Falk, M.J.), report and recommendation adopted sub nom. *Cty. Of Morris v. State Nat. Ins.*, No. 2:10-CV-6616, 2011 WL 2036439 (D.N.J. May 22, 2011) (co-defendant's consent to removing defendants' notice of removal unnecessary when co-defendant was not effectively served at the time the notice of removal was filed); *Ingersoll-Rand Co. v. Barnett*, No. 05-1636 (DRD), 2005 WL 2175461, at *5 (D.N.J. Sept. 7, 2005) (because plaintiff did not file an affidavit of inquiry, the thirty day removal period was not triggered and defendant did not need to obtain co-defendant's consent to remove). There is no equitable or other exception to this jurisdictional prerequisite.

Here, Plaintiffs failed to file an affidavit of inquiry prior to personally serving Sysco Corp. and Sysco Plan in Texas. Sysco Corp. and Sysco Plan thus were not (and are not) required to consent to removal. Plaintiffs have described how they retained a process server to personally serve both Sysco Corp. and Sysco Plan in their Houston, Texas offices on July 19, 2018. [Pls. Mot. at 6-7]. Plaintiffs cannot state that they filed an affidavit of inquiry certifying that personal service could not be made within the State of New Jersey, as plainly required by N.J. Ct. R. 4:4-4(b)(1). Plaintiffs thus failed to effectuate service on Sysco Corp. and Sysco Plan, and Sysco

6

Corp. and Sysco Plan's consent was not necessary for removal. Sysco Metro therefore "complied with all applicable procedural requirements when removing this matter to the United States District Court" on August 16, 2018. *R.K.*, 2017 WL 3302690, at *3.

### B. Sysco Corp. and Sysco Plan Certified in Writing that They Authorized Sysco Metro to Consent on Their Behalf.

Even assuming, *arguendo*, that all of the defendants in this litigation *had* been properly served at the time the Notice of Removal was filed, the court should "refrain from applying the [rule of unanimity] standard in a hyper-technical and unrealistic manner." *Michalak v. ServePro Industries, Inc.*, No. CV 18-1727 (RBK/KMW), 2018 WL 3122327, at *5 (D.N.J. June 26, 2018). In *Michalak*, the Court held that policy considerations did not warrant remand where (i) a defendant timely filed a removal notice that indicated the consent of its codefendants, and (ii) such codefendants later certified to the Court that they had consented to the removal at the time the notice was filed. *Id.* Observing that "[p]otential Rule 11 sanctions and a codefendant's opportunity to alert the court to any falsities in the removing defendants' notice serve as safeguards to prevent removing defendants from making false representations of unanimous consent," the Court noted that "as long as the removing defendant's codefendant itself later files an indication of its consent, any potential concern that the codefendant has not authorized or manifested its binding consent to removal is mitigated." *Id.* (citing *Griffioen v. Cedar Rapids and Iowa City Ry. Co.*, 785 F.3d 1182, 1188 (8th Cir. 2015)). Because the codefendants in *Michalak* certified in writing that they had indeed consented to the removal at the time the notice was filed, the court found that "all defendants intended to consent to removal" and it "refrain[ed] from applying the [rule of unanimity] standard in a hyper-technical and unrealistic manner." *Id.*; *see also Siebert v. Norwest Bank Mn.*, 166 F. App'x 603, 607 (3d Cir. 2006) (noting that the

7

Third Circuit has not decided whether a codefendant's written consent to remove is required to be filed within the 30-day removal period).

Just like the removing defendant in *Michalak*, Sysco Metro filed its removal notice in a timely manner and indicated that although they had not been served, Sysco Corp. and Sysco Plan consented to removal. [ECF No. 1, at ¶ 3]. Less than a month following Sysco Metro's filing of the removal notice, Sysco Corp. and Sysco Plan further affirmed in writing to this Court that they had authorized Sysco Metro to consent on their behalf to the Notice of Removal at the time it was filed. [ECF No. 8]. Because Sysco Corp. and Sysco Plan subsequently filed a certification of their consent to the removal, "any potential concern that the codefendant has not authorized or manifested its binding consent to removal is mitigated" and the court should decline Plaintiffs' motion to remand on this "hyper-technical and unrealistic" basis. *Michalak*, 2018 WL 3122327, at *5.

### C. If Defendants Failed to Comply with the Procedural Requirements Governing Removal, They Should Be Granted the Opportunity to Amend Their Removal Petition Due to the Existence of "Extraordinary Circumstances."

If, notwithstanding the well-established case law to the contrary, this Court finds that Defendants failed to comply with the procedural requirements governing removal, Defendants should be granted the opportunity to amend the removal petition based on "extraordinary circumstances." *Michaels v. State of N.J.*, 955 F. Supp. 315, 322 (D.N.J. 1996). As indicated in Sysco Metro's removal notice, Defendants believed in good faith that Sysco Corp. and Sysco Plan had not been properly served at the time the notice was filed due to Plaintiffs' failure to file an affidavit of inquiry. [ECF No. 1, at ¶ 3]. In light of the wealth of jurisprudence within this district holding that out-of-state service without an affidavit of inquiry will not start the removal

clock (*see* § I(A), *supra*), Sysco Corp. and Sysco Plan had no "unambiguous guidance" suggesting that they needed to provide separate consent to removal in writing during the 30-day removal period when Plaintiffs failed to file an affidavit of inquiry prior to personally serving them in Texas. *Id.* (finding that remand was not appropriate when there was "no published opinion by any court in this district that addresses the issue of whether a formal writing is necessary to satisfy removing defendants' joinder obligations"); *Wal-Mart Stores, Inc. v. Elec. Ins. Co.*, No. CIV. 06-3132 (RBK), 2007 WL 137238, at *4 (D.N.J. Jan. 18, 2007) ("Like the removing defendants in *Michaels*, [removing defendants] did not have clear guidance on how to meet the requirements of the federal removal statute."). In the unlikely event that this Court finds that service on Sysco Corp. and Sysco Plan was proper on July 19, 2018, and that Sysco Corp. and Sysco Plan were required to file their separate written consent to removal within the thirty days following, Sysco Metro respectfully requests leave to amend its Notice of Removal due to the above-stated extraordinary circumstances.

## II. THIS COURT MAINTAINS CLEAR SUBJECT MATTER JURISDICTION UNDER ERISA

"Because its purpose is to provide a uniform regulatory regime, ERISA includes expansive pre-emption provisions, such as ERISA's § 502(a)'s integrated enforcement mechanism, which are intended to ensure that employee benefit plan regulation is 'exclusively a federal concern.'" *Aetna Health Inc. v. Davila*, 542 U.S. 200, 200 (2004) (citing *Alessi v. Raybestos-Manhattan, Inc.*, 451 U.S. 504 (1981)). ERISA's preemptive power is exceptional. Any cause of action within the scope of Section 502, irrespective of whether it was brought under state law, is completely preempted. *Id.* at 209. This is a notable departure from the generally-applicable "well-pleaded complaint" rule, as even state law claims with no reference to

9

ERISA are removable when they fall within the scope of Section 502. *See Metropolitan Life Insur. Co. v. Taylor*, 481 U.S. 58, 65 (1987) (acknowledging ERISA's "extraordinary pre-emptive power" and holding that Section 502 preemption "converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule"); *Wood v. Prudential Ins. Co. of Am.*, 207 F.3d 674, 678 (3d Cir. 2000) ("The United States Supreme Court has recognized the doctrine of complete preemption as a corollary or an exception to the 'well-pleaded complaint' rule."); *Cliffside Park Imaging & Diagnostic Ctr. v. Aetna*, No. CIV.A. 12-5868 WJM, 2013 WL 592264, at *2 (D.N.J. Jan. 28, 2013), report and recommendation adopted, No. CIV.A. 12-5868 WJM, 2013 WL 592255 (D.N.J. Feb. 13, 2013) (Falk, M.J.) ("The doctrine of complete preemption 'creates removal jurisdiction even though no federal question appears on the face of the plaintiff's complaint.'"). Removal of state law claims is therefore appropriate under Section 502 when: (i) the plaintiff could have brought the claim under Section 502(a); and (ii) no other independent legal duty supports the plaintiff's claim. *Pascack Valley Hosp. Inc. v. Local 464A UFCW Welfare Reimbursement Plan*, 388 F.3d 393, 400 (3d Cir. 2004).

### A. Plaintiffs' Claims Fall Under Section 502(a) of ERISA

Plaintiffs could have brought their claims under Section 502(a) of ERISA.[3] Section 502(a)(1)(b) sets forth a cause of action for a participant or beneficiary of an ERISA-regulated plan "to recover benefits due to him under the terms of his plan, to enforce the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C.A. §1132(a)(1)(b). In bringing this suit, Plaintiffs seek to (i) clarify their rights by way of

---

[3] Plaintiffs proffer only the conclusory statement that "Plaintiffs do not clearly have the right to proceed against [Defendants] under ERISA §502," but offer no legal argument or evidence to support this proposition in their entire 26-page brief. [Pls. Mot. at 26].

10

declaratory judgment concerning an alleged "Pre-Retirement Benefit" and "Death Benefit" to which they purport to be entitled due to their participation in the Sysco Plan; (ii) enforce the terms of such alleged "Pre-Retirement Benefit" to which they purport to be entitled due to their participation in the Sysco Plan; (iii) enforce an alleged "Death Benefit" to which they purport to be entitled due to their participation in the Sysco Plan; (iv) recover benefits to which they purport to be entitled due to Defendants' alleged noncompliance with the agreed-upon terms of the Sysco Plan; and (v) recover damages related to unjust enrichment and breach of contract for Defendants' alleged failure to transfer certain benefits from the 863 Fund Pension Plan to the Sysco Plan. Each of these claims falls squarely within Section 502's enforcement mechanism, and as participants and/or beneficiaries of the Sysco Plan and/or the 863 Fund Pension Plan (or representatives thereof), Plaintiffs do not dispute that they have standing to sue under this provision.

### B. No Other Independent Legal Duty Supports the Plaintiffs' Claims

Complete preemption under ERISA requires that no other independent legal duty supports a plaintiff's claims. *Pascack*, 388 F.3d at 400. A legal duty is "independent" if it "would exist whether or not an ERISA plan existed." *New Jersey Carpenters & the Trustees Thereof v. Tishman Const. Corp. of New Jersey*, 760 F.3d 297, 303 (3d Cir. 2014). Otherwise put, "if the state law claim is not 'derived from, or conditioned upon' the terms of an ERISA plan, and '[n]obody needs to interpret the plan to determine whether that duty exists,' then the duty is independent." *Id.* (citing *Gardner v. Heartland Indus. Partners, LP*, 715 F.3d 609, 614 (6th Cir. 2013)).

Notwithstanding Plaintiffs' conclusory representations, a simple reading of the Spinoff Agreement reveals that it is conditioned upon and derives from the 863 Fund Pension Plan and

11

the Sysco Plan (two "ERISA plans"), and would not exist absent these plans.[4] This simple conclusion follows from the Spinoff Agreement's clear **incorporation** of the Sysco Plan by reference and as an exhibit. [ECF No. 15-4, Ex.G, at § 5(a)]. Plaintiffs' characterization of the Spinoff Agreement as an "independent source" thus lacks any merit. [Pls. Mot. at 25]; *see, e.g., Gomez v. Ericsson, Inc.*, No. 2:13-CV-00372-JRG, 2014 WL 243698, at *4 (E.D. Tex. Jan. 22, 2014), aff'd, 828 F.3d 367 (5th Cir. 2016) (finding claims brought under a severance agreement that incorporated by reference the terms of an ERISA plan were completely preempted by §502(a) of ERISA).

Even if the Court disregards that one of the two ERISA plans at issue is incorporated into the Spinoff Agreement – an independently sufficient and obvious reason for denying Plaintiffs' Second Motion for Remand – the Spinoff Agreement serves as a mere bridge between the 863 Fund and the Sysco Plan. Describing the benefits to which the putative "Transfer Group" will be entitled as members of the Sysco Plan does not create any independent legal duty absent these plans.

This Court cannot enforce or clarify the terms of the Spinoff Agreement without referencing, interpreting, and/or comparing two separate ERISA plans. As one example, the Spinoff Agreement requires that the parties jointly agree to the terms of an amendment to the Sysco Plan that will set forth the benefit structure applicable to the Transfer Group. [ECF 15-4, Ex. G, at § 5(a)]. The terms of the putative Transfer Group's participation in the Sysco Plan (as is at issue in this litigation) therefore cannot be determined by reference to the Spinoff Agreement alone, but rather requires interpretation of this ERISA-governed amendment. The

---

[4] The title "Spinoff Agreement" itself indicates that it is derivative of another contract. *See Merriam-Webster Dictionary*, "Spin-off," *available at* https://www.merriam-webster.com/dictionary/spin-off (defining "spin-off" as "a collateral or derived product or effect" or "something that is imitative or derivative of an earlier work, product, or establishment").

12

Spinoff Agreement itself expressly contemplates that construing its terms may require interpretation of the ERISA plans (as well as ERISA). As provided in Section 9(b) of the Spinoff Agreement, "[a]nything in this Agreement, or any amendment hereof, to the contrary notwithstanding, no provision of this Agreement shall be construed so as to violate any applicable provisions of the Fund or the Sysco Plan, their plans of benefits or trust agreements, or ERISA (or any regulations or rules promulgated pursuant thereunder)." [ECF 15-4, Ex.G, at §9 (b)].

If the foregoing were not enough, Plaintiffs' own allegations make it clear that, at minimum, Plaintiffs' claims require interpretation of the 863 Fund Pension Plan. According to Plaintiffs' Complaint, Plaintiff Chavis's right to the $3,000 Death Benefit derives from both "**the relevant Plan Documents** and the Spinoff Agreement." [Compl. at ¶ 7 (emphasis added)]. Plaintiffs further allege that "Scott and other Transfer Group members like him have the right and entitlement to designate and change a nonspouse beneficiary as a recipient of such pension benefits **as are set forth in the applicable Plan documents**, should he die before he begins receiving his pension." [Compl. at ¶ 26 (emphasis added)]. Plaintiffs' counsel himself further concedes the relevance of the terms of the 863 Fund to the disposition of this litigation in Paragraph 10 of his declaration, filed concurrently with Plaintiffs' motion to remand, stating: "Attached hereto as Exhibit H are **relevant** pages of the Local 863 Pension Plan, as they existed on the date of the Spinoff Agreement, August 31, 2008, with amendments. The **relevant** sections are §§ 4.07 and 11.01." [ECF No. 15-4, Declaration of Flavio Komuves, ¶ 10 (emphasis added)]. Were the Spinoff Agreement truly a standalone, non-derivative legal obligation that exists absent an ERISA plan, the terms of 863 Fund would be irrelevant to the determination of

the parties' obligations under the Spinoff Agreement.[5]  Because Defendants' obligations under the Spinoff Agreement are derived from two ERISA Plans, and would not exist absent these plans, they cannot constitute an "independent legal duty" to support Plaintiffs' claims.

The cases relied upon by Plaintiffs are inapposite.  The plaintiff in *Pascack Valley* was a hospital, and not a beneficiary or participant in an ERISA plan.  388 F.3d at 400.  As such, the Court found that the plaintiff would have no standing to bring a claim under Section 502 and therefore, the first prong of the ERISA preemption inquiry was not satisfied.  *Id.*  The plaintiff's claims arose from a third-party contract between itself and an independent consultant, in which plaintiff allegedly agreed to provide discounted rates for medical services to beneficiaries of certain group health plans.  *Id.* at 396.  Neither of the contracting parties was an ERISA-governed plan (or sponsor thereof) or a participant or beneficiary of an ERISA-governed plan (or a representative thereof).  *Id.*  In the instant litigation, "[n]one of the rationales for the holding in *Pascack Valley* are present. There is no separate third-party contract that is involved in this suit, the alleged beneficiar[ies] [are] the plaintiff[s] in this action, no ERISA standing issues have been raised by the parties, and the dispute concerns [the] Plaintiff[s'] right to payment." *Talley v. United States*, No. CIV. 11-1180 RBK/KMW, 2014 WL 1248946, at *7 (D.N.J. Mar. 26, 2014).  *Pascack Valley* is thus immaterial.

The facts in *N.J. Carpenters* are likewise distinguishable.  The Court in *N.J. Carpenters* considered whether a claim brought under the Prevailing Wage Act ("PWA"), a New Jersey state law, was completely preempted by ERISA.  760 F.3d at 302.  The Court found the claim was not completely preempted because the defendant's obligations under the PWA constituted an

---

[5] The pretextual nature of Plaintiffs' argument that their claims arise solely from Defendants' alleged noncompliance with the Spinoff Agreement is further evinced by their naming of Sysco Plan as a defendant.  Plaintiffs allege in their motion to remand that Sysco Plan was **not** a party to the Spinoff Agreement. [Pls. Mot. at 2, 26]. If this is the case, it therefore cannot be liable for breaching the Spinoff Agreement.

14

"independent legal duty." *Id.* at 303-04. In making this determination, the Court looked to what the plaintiffs needed to prove to prevail on their claims – namely, that the amount paid to the plaintiffs was less than the amount they were owed under the PWA – and decided that the plaintiffs' claims were not preempted because "[t]he defendant's duty to pay prevailing wages derive[d] from PWA, not any ERISA plan. No interpretation of any ERISA plan [wa]s necessary in order to determine whether the [plaintiffs] were paid prevailing wages" under the Act, and "the defendant would be required to pay prevailing wages under the Act irrespective of whether any ERISA plan existed." *Id.* at 303-04.

Unlike the claims brought by the plaintiffs in *N.J. Carpenters*, this Court will be required to compare, analyze, and interpret the terms of two separate ERISA plans to determine whether (i) Defendants had any obligation to offer Plaintiffs the benefits that were allegedly provided in the 863 Fund Pension Plan, and (ii) whether Defendants breached any such alleged obligations by failing to incorporate the relevant benefits into the terms of the Sysco Plan. Defendants would have no obligations under the Spinoff Agreement absent the existence of the 863 Fund Pension Plan and the Sysco Plan. Unlike the PWA, the subject matter of the Spinoff Agreement (employee pension benefits) falls squarely within ERISA's purview and is not a sphere traditionally regulated by the states. As such, the Court's reasoning in *N.J. Carpenters* in fact demonstrates that Plaintiffs' claims are completely preempted by Section 502.

### III. PLAINTIFFS' REQUEST FOR FEES SHOULD BE DENIED

Plaintiffs' request for fees is as improper as their motion to remand. The Supreme Court has instructed that "the standard for awarding fees should turn on the reasonableness of the removal. Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal.

15

Conversely, when an objectively reasonable basis exists, fees should be denied." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005). As noted throughout this submission, Defendants have an objectively reasonable basis for removal, while Plaintiffs' attempt to bring this claim in state court remains unprecedented and unwarranted. The plain language of ERISA and relevant jurisprudence indicate the Plaintiffs' claims are preempted and must be in federal court. There was nothing improper about Defendants' removal. Under these circumstances, fees cannot be awarded to Plaintiffs.

## CONCLUSION

For the above-stated reasons, Defendants respectfully request that (i) Plaintiffs' motion to remand and accompanying request for attorneys' fees be denied in full; and (ii) any other relief that the Court deems just and proper.

November 19, 2018

/s/ Emily Freeman David

Keith J. Rosenblatt, Esq.
Emily Freeman David, Esq.
**LITTLER MENDELSON, P.C.**
One Newark Center, 8th Floor
Newark, New Jersey 07102
(973) 848-4700

Michael G. Congiu, Esq.
**LITTLER MENDELSON, P.C.**
1300 IDS Center
80 South 8th Street
Minneapolis, MN 55402.2136
(612) 630.1000

*Attorneys for Defendants*